UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIDNEY WYLIE | : | PRISONER |
| | : | NO. 3:01CV137(PCD)(JGM) |
| VS. | : | |
| | : | |
| MICHAEL LAJOIE AND | : | |
| CHRISTINE WHIDDEN | : | AUGUST 31, 2004 |

### THE DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants move for summary judgment against the plaintiff's amended complaint ("complaint") dated March 7, 2003. The plaintiff alleges in his complaint, brought pursuant to 42 U.S.C. § 1983, that the defendants, two non-medical employees of the Connecticut Department of Correction, were deliberately indifferent to the plaintiff's medical needs by failing to provide him with medical care from the period of December 18, 2000 through January 4, 2001.

The defendants assert that there are no material issues fact in dispute concerning the following:

    1.    They were not deliberately indifferent to the plaintiff's serious medical needs.

    2.    They are immune from suit in their official capacity.

    3.    They are protected by the doctrine of qualified immunity because at all times they acted pursuant to a good faith belief that their actions were appropriate under the United States Constitution.

**I.**    **INTRODUCTION**

The plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. In his initial complaint, the plaintiff named over thirty defendants. On May 13, 2002, the court granted in part the

defendants' motion to dismiss the complaint for failure to exhaust administrative remedies. The only claim that remains court is "that the defendants Whidden and Lajoie denied the plaintiff medical treatment between December 18, 2000 and January 4, 2001." (Revised Scheduling Order, Dated June 18, 2004.)

## II.   FACTS[1]

### A.   Background

The plaintiff was at all times relevant to this complaint an inmate confined to the custody of the Connecticut Department of Correction ("DOC") and housed at the Northern Correctional Institution ("Northern") in Somers, Connecticut.

The defendants in this action are Michael Lajoie and Christine Whidden. At the time in question, both defendants were stationed at Northern and held the rank of major. (Lajoie Aff., ¶ 3; Whidden Aff., ¶ 3.) Neither of the defendants is a health professional. (Lajoie Aff., ¶ 8; Whidden Aff., ¶ 8.) Both defendants have, subsequent to the actions in this case, been promoted to DOC wardens. (Id.)

On December 18, 2000, the DOC transported the plaintiff to court for a criminal matter. The plaintiff refused to be transported to court and had to be forcibly transferred by the DOC.

---

[1] This memorandum of law refers to the following documents: (1) Exhibit A, Affidavit of Christine Whidden, dated August 9, 2004 ("Whidden Aff."); (2) Exhibit B, Affidavit of Michael Lajoie, dated August 3, 2004 ("Lajoie Aff."); (3) Exhibit C., Affidavit of Patricia Wollenhaupt, dated August 11, 2004 ("Wollenhaupt Aff."); (4) Exhibit D, Affidavit of Terence Rose, dated August 2, 2004 ("Rose Aff."); (5) Exhibit E, Medical Records of Sidney Wylie ("Medical Records") (6) Exhibit F, Incident Reports concerning Sidney Wylie ("Incident Report"); and (7) Exhibit G, Disciplinary Report concerning Sidney Wylie ("Disciplinary Report").

During the trip to and from court, the plaintiff behaved inappropriately. (Incident Report and Disciplinary Report.)

Upon his return from court, the plaintiff complained of pain in his left shoulder. (Wollenhaupt Aff., ¶ 11.) He was examined by DOC medical personnel. Medical personnel determined that the plaintiff did not have any medical problems. (Id., Attachment 1.)

The plaintiff continued to act disruptively. Because of the plaintiff's disruptive behavior, he was placed in four point restrains on December 18, 2000. (Incident Reports.)

On December 20, 2000, the plaintiff filed an inmate grievance in which he asserted that his right shoulder hurt. Nurse Patricia Wollenhaupt rejected this grievance because the plaintiff did not follow the appropriate process, namely signing up for sick call. (Wollenhaupt Aff., ¶ 12.)

On January 3, 2001, the plaintiff filed another grievance in which he again requested to be seen concerning his shoulder. Nurse Wollenhaupt upheld this grievance and placed Mr. Wylie on a list to be seen by a nurse practitioner. (Id., ¶ 13.)

On January 5, 2001, Northern medical staff saw the plaintiff concerning his complaints of shoulder pain. The plaintiff was prescribed Motrin and x-rays were ordered. (Medical Records.) The plaintiff discharged from DOC custody on January 9, 2001. (Rose Aff., Attachment 1.)

The defendants did not interfere with the plaintiff's access to medical treatment from December 18, 2000 through January 4, 2001. (Lajoie Aff., ¶ 6; Whidden Aff., 6; Wollenhaupt Aff., ¶ 16.)

### B. Medical Care in the Department of Correction

The DOC provides inmates with medical treatment. The appropriate manner by which an inmate obtains non-emergency medical care is to sign up for sick call. This is the case at Northern and all other DOC facilities. (Rose Aff., ¶ 10.) Nurse Wollenhaupt describes in her affidavit the process in detail. (Wollenhaupt Aff., ¶¶ 6-8.)

The plaintiff is an experienced inmate who has been in and out of DOC facilities since March 10, 1976. (Rose Aff., ¶ 4.) In addition, the plaintiff has been housed at Northern several times, and was housed there from November 15, 2000 to January 9, 2001. (Id., ¶ 5.) When an inmate enters Northern, he is provided with an Inmate Handbook which is specific to Northern. (Id., ¶ 6.)

A review of DOC records indicates that on April 26, 2000, the plaintiff signed an acknowledgement form indicating that he received the Northern Inmate Handbook. In addition, the plaintiff received an Inmate Handbook on November 15, 2000. At the time, the plaintiff was unable to sign the receipt form. Because the plaintiff was transferred to Northern that day, it is likely that the plaintiff was in restraints and therefore could not sign. (Id., ¶ 7.)

The Inmate Handbook which the plaintiff received in November 2000 describes the appropriate means by which an inmate accesses non-emergency medical treatment. It states: "4. Sick Call. Sick call is the opportunity for you to bring a non-emergency health problem to the attention of medical staff." It then describes the procedure to sign up for sick call. (Id., ¶ 8.)

The plaintiff, as an experienced inmate, knew at the time in question that if he had a non-emergency medical condition (such as that alleged here) the appropriate course of action was to

4

sign up for sick call.  (Rose Aff., ¶ 10; Wollenhaupt Aff., ¶ 15; Lajoie Aff., ¶ 9; Whidden Aff., ¶ 10.)

### III. STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Federal Rule of Civil Procedure 56(c).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

### IV. DISCUSSION

#### A. The Defendants Were not Deliberately Indifferent to a Known, Serious Medical Condition

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs."  Estelle v. Gamble, 429 U.S. 97 (1976).  Mere negligence will not support a Section 1983 claim.  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 203, 232

(S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143

F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

There is no evidence in this case that either of the defendants (neither of whom is a medical professional) disregarded a known and serious risk to the plaintiff's health.

Most importantly, the plaintiff did not have a serious medical problem. The plaintiff's complaint appears to be that he had pain in his right shoulder, which began on December 18, 2000. When he was seen by DOC medical personnel on January 5, 2001, he was proscribed only Motrin for the alleged pain and x-rays were ordered. This was the plaintiff's only visit to medical prior to his discharge on January 9, 2001.

With respect to defendant Lajoie, the plaintiff complained only that he had an "injury" to his right shoulder as well as scars to his shoulder and ankle which he wished to have evaluated. He did not even allege that he had pain. (Lajoie Aff., Attachment 1.) Because the plaintiff did not assert that he had a serious medical problem, defendant Lajoie cannot be found to have disregarded the plaintiff's medical situation.

Concerning defendant Whidden, an examination of DOC records has failed to find any request written to her at the time period by the plaintiff. In addition, defendant Whidden has no recollection of being contacted by the plaintiff. (Whidden Aff., ¶ 6.)

Moreover, the evidence submitted indicates that Northern has an inmate handbook which details the means by which inmates obtain non-emergency medical care, namely signing up for

7

sick call. The plaintiff signed for that Handbook. Indeed, the plaintiff himself concedes that he received and read Northern's Inmate Handbook. As he stated in his Request to defendant Lajoie: "I am bringing this too [sic] your attention and all other Administrators in the new Inmate handbook." (Lajoie Aff., Attachment 1.)

Simply put, during the time period at which the plaintiff was writing letters to non-medical DOC employees, he had every opportunity to sign up for sick call and see a doctor. The plaintiff, in an apparent attempt to manufacture a lawsuit, decided to forgo that route.

In fact, the record reflects that Nurse Wollenhaupt informed the plaintiff on January 2, 2001 to sign up for sick call, and the next day the plaintiff decided instead to file another grievance. On the second occasion, Nurse Wollenhaupt signed up the plaintiff for sick call, since he apparently did not wish to follow the protocol.

    **B.**    **In the Event That the Court Finds That the Defendants May Have Violated Some Constitutional Right of the Plaintiff, the Defendants are Entitled to Qualified Immunity**

The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The Second Circuit has described the circumstances where qualified immunity would apply as follows:

> a government official sued in his individual capacity … is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law …; or (2) where the conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct …; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] … in light of the legal rules that were

clearly established at the time it was taken.'  These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right.  The unlawfulness must be apparent.  McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted).  In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful.  Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

In the present case, the defendants at all times operated in accordance with the reasonable belief that the plaintiff knew that if he had a non-emergency medical complaint that the appropriate course of action was to sign up for sick call.  Both of the defendants – and two other DOC employees (Nurse Wollenhaupt and Major Terence Rose) – have testified that the plaintiff was fully aware that if he had a non-emergency medical condition the appropriate course of action was to sign up for sick call.  (Rose Aff., ¶ 10; Wollenhaupt Aff., ¶ 15; Lajoie Aff., ¶ 9; Whidden Aff., ¶ 10.)  The defendants were reasonable in relying upon the system that the DOC has in place for the provision of medical services, particularly in light of the plaintiff's status as an experienced inmate, given the plaintiff's knowledge of how to access medical care.

### C.     The Defendants are Immune From Suit in Their Official Capacity

To the extent that any portion of this action survives summary judgment, it is well-established that the defendants are immune from suit in their official capacity.

## V. **CONCLUSION**

For the reasons set forth above, the defendants respectfully urge that their motion for summary judgment be granted.

<div style="margin-left: 40%;">

DEFENDANTS,
Michael Lajoie and Christine Whidden

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:___/s/_____
Neil Parille
Assistant Attorney General
Fed. Bar No. 15278
110 Sherman Street
Hartford, CT  06105
Telephone No.:  (860) 808-5450
Fax No. (860) 808-5591
E-mail:  neil.parille@po.state.ct.us

</div>

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 31st day of August, 2004, to:

Sidney Wylie
c/o Connecticut Valley Hospital
PO Box 351 Silver Street
Battell Hall North 4
Middletown, CT 06547

<div style="margin-left: 40%;">

___/s/_____
Neil Parille
Assistant Attorney General

</div>