## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIDNEY WYLIE | : | PRISONER |
| | : | NO. 3:01CV137(PCD)(JGM) |
| VS. | : | |
| | : | |
| MICHAEL LAJOIE AND | : | |
| CHRISTINE WHIDDEN | : | AUGUST 31, 2004 |

### THE DEFENDANTS' LOCAL RULE 56(A)(1) STATEMENT

The defendants respectfully represent, pursuant to Local Rule 56(a)(1) that the following material facts are not in dispute:[1]

1.     The plaintiff was at all times relevant to this complaint an inmate confined to the custody of the Connecticut Department of Correction ("DOC") and housed at the Northern Correctional Institution ("Northern") in Somers, Connecticut.

2.     The defendants in this action are Michael Lajoie and Christine Whidden.  At the time in question, both defendants were stationed at Northern and held the rank of major.  (Lajoie Aff., ¶ 3; Whidden Aff., ¶ 3.)

3.     Neither of the defendants is a health professional.  (Lajoie Aff., ¶ 8; Whidden Aff., ¶ 8.)

---

[1]     This statement of facts refers to the following documents, which are attached to the memorandum of law: (1) Exhibit A, Affidavit of Christine Whidden, dated August 9, 2004 ("Whidden Aff."); (2) Exhibit B, Affidavit of Michael Lajoie, dated August 3, 2004 ("Lajoie Aff."); (3) Exhibit C., Affidavit of Patricia Wollenhaupt, dated August 11, 2004 ("Wollenhaupt Aff."); (4) Exhibit D, Affidavit of Terence Rose, dated August 2, 2004 ("Rose Aff.:); (5) Exhibit E, Medical Records of Sidney Wylie ("Medical Records") and (6) Exhibit F, Incident Report concerning Sidney Wylie ("Incident Report"); and (7) Exhibit G, Disciplinary Report concerning Sidney Wylie ("Disciplinary Report").

4.      The plaintiff's movement sheet indicates that he has been in and out of DOC facilities since March 10, 1976.  (Rose Aff., ¶ 4.)

5.      The plaintiff has been housed at Northern several times.  A review of the records indicate that he was housed at Northern from November 15, 2000 to January 9, 2001.  (Id., ¶ 5.)

6.      When an inmate enters Northern, he is provided with an Inmate Handbook which is specific to Northern.  (Id., ¶ 6.)

7.      A review of DOC records indicates that on April 26, 2000, the plaintiff signed an acknowledgement form indicating that he received the Northern Inmate Handbook.  In addition, the plaintiff received an Inmate Handbook on November 15, 2000.  At the time, the plaintiff was unable to sign the receipt form.  Because the plaintiff was transferred to Northern that day, it is likely that the plaintiff was in restraints and therefore could not sign.  (Id., ¶ 7.)

8.      The Inmate Handbook which the plaintiff received in November 2000 describes the appropriate means by which an inmate accesses non-emergency medical treatment.  (Id., ¶ 8.)

9.      The Inmate Handbook states: "4.  Sick Call.  Sick call is the opportunity for you to bring a non-emergency health problem to the attention of medical staff."  It then describes the procedure to sign up for sick call.  (Id., ¶ 8.)

10.     The plaintiff, as an experienced inmate, knew at the time in question that if he had a non-emergency medical condition (such as that alleged here) the appropriate course of action was to sign up for sick call.  (Rose Aff., ¶ 10; Wollenhaupt Aff., ¶ 15; Lajoie Aff., ¶ 9; Whidden Aff., ¶ 10.)

11.     On December 18, 2000, the DOC transported the plaintiff to court for a criminal matter.  (Incident Reports.)

12.     The plaintiff refused to be transported to court and had to be forcibly transferred by the DOC.  (Id.)

13.     During the trip to and from court, the plaintiff behaved inappropriately. (Disciplinary Report.)

14.     Upon his return from court, the plaintiff complained of pain in his left shoulder. (Wollenhaupt Aff., ¶ 11.)

15.     Upon his return from court, the plaintiff was examined by DOC medical personnel.  Medical personnel determined that the plaintiff did not have any medical problems. (Id., Attachment 1.)

16.     Because of the plaintiff's disruptive behavior, he was placed in four point restrains on December 18, 2000.  (Incident Reports.)

17.     On December 20, 2000, the plaintiff filed an inmate grievance in which he asserted that his right shoulder hurt.  Nurse Patricia Wollenhaupt rejected this grievance because the plaintiff did not follow the appropriate process, namely signing up for sick call. (Wollenhaupt Aff., ¶ 12.)

19.     On January 3, 2001, the plaintiff filed another grievance in which he again requested to be seen concerning his shoulder.  Nurse Wollenhaupt upheld this grievance and placed Mr. Wylie on a list to be seen by a nurse practitioner.  (Id., ¶ 13.)

20.     The plaintiff was seen on January 5, 2001 by Northern medical staff concerning his complaints of shoulder pain.  Motrin was prescribed and x-rays ordered.  (Medical Records.)

21.     The plaintiff discharged from DOC custody on January 9, 2001.  (Rose Aff., Attachment 1.)

22.     The defendants did not interfere with the plaintiff's access to medical treatment from December 18, 2000 through January 4, 2001.  (Lajoie Aff., ¶ 6; Whidden Aff., 6; Wollenhaupt Aff., ¶ 16.)

DEFENDANTS,
Michael Lajoie and Christine Whidden

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:___/s/_____
Neil Parille
Assistant Attorney General
Fed. Bar No. 15278
110 Sherman Street
Hartford, CT  06105
Telephone No.:  (860) 808-5450
Fax No. (860) 808-5591
E-mail:  neil.parille@po.state.ct.us


## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 31st day of August, 2004, to:

Sidney Wylie
c/o Connecticut Valley Hospital
P.O. Box 351 Silver Street
Battell Hall North 4
Middletown, CT 06547                     ___/s/_____
Neil Parille
Assistant Attorney General